IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| BEKAERT CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF DYERSBURG, | ) |
| DYERSBURG ELECTRIC SYSTEM, | ) |
| and J.E. WILLIAMSON, JR., | ) |
| | ) |
| Defendants, | ) No. 07-2316-STA-dkv |
| | ) |
| CITY OF DYERSBURG, ON BEHALF | ) |
| OF DYERSBURG ELECTRIC | ) |
| SYSTEM, | ) |
| | ) |
| Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BEKAERT CORPORATION, | ) |
| | ) |
| Counter-Defendant. | ) |

**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE EXPERT DESIGNATION OF MICHAEL HYNES**

Before the Court is Plaintiff Bekaert Corporation's ("Bekaert") Motion to Strike the Expert Designation of Michael Hynes (D.E. # 85). Defendant City of Dyersburg ("Dyersburg") has since responded (D.E. # 91). A hearing on the Motion was held January 20, 2009, at which time Dyersburg was granted leave to file a supplemental response (D.E. # 116). For the reasons set for below, Plaintiff's Motion to Strike the Expert Designation of Michael Hynes is hereby

1

**GRANTED**.

## BACKGROUND

The City of Dyersburg operates the Dyersburg Electric System ("DES"), which distributes power that it purchases from the Tennessee Valley Authority ("TVA") pursuant to a contract ("the TVA Contract"). (Compl. ¶¶ 8-9; D.E. # 1; Ans. ¶¶ 8-9; D.E. # 10.) The TVA Contract requires that DES purchase and distribute energy in accordance with a series of rate schedules. (Compl. ¶ 10; D.E. # 1; Ans. ¶ 10; D.E. # 10.) In 1988, Bekaert's Dyersburg plant began purchasing energy from DES via a separate contract. (Compl. ¶¶ 14, 19; D.E. # 1; Ans. ¶¶ 14, 19; D.E. # 10.) However, on November 15, 2006, Bekaert allegedly announced that the Dyersburg plant would start curtailing production beginning May 1, 2007 in an effort to gradually cease operations altogether. (Compl. ¶¶ 23; D.E. # 1.) Bekaert's then current contract with DES was set to expire on December 31, 2006, and thus, Bekaert and DES entered into negotiations for a new contract that better suited Bekaert's needs given the impending plant closure. (Compl. ¶¶ 21, 24-26; D.E. # 1; Ans. ¶¶ 21, 24-26; D.E. # 10.) Eventually negotiations broke down, and on January 1, 2007, Bekaert began purchasing power from DES without a contract. (Compl. ¶¶ 28; D.E. # 1; Ans. ¶¶ 28; D.E. # 10.) As such, Bekaert now disputes the rate at which DES has charged them since they began purchasing power without a contract on January 1, 2007. (D.E. #1.)

The Motion currently before the Court concerns several issues surrounding Dyersburg's expert designation of Michael Hynes. Since 2006, Mr. Hynes has been employed by the Tennessee Valley Authority ("TVA") as its Vice-President of Product Design and Pricing. (Pl.'s Mot. to Strike 2; D.E. # 85.) In this position, Mr. Hynes is responsible for setting the prices at

which TVA sells power to its distributors; for approving the prices at which distributors sell power to their customers; and for identifying new pricing products that might be needed. (*Id.* at 3.) Prior to Mr. Hynes's employment with TVA, he had worked for Niagara Mohawk Power Corporation (later National Grid, which acquired Niagara). (*Id.* at 2.) At Niagara, Mr. Hynes had worked in the Rates Department until he became Vice-President of Business Services, and as such responsible for the distribution of gas and electricity in Eastern New York. (*Id.*) According to Dyersburg's expert designations, Dyersburg disclosed that Mike Hynes would be providing expert testimony on their behalf. (*Id.*) Bekaert now moves to strike the expert designation of Mr. Hynes for several reasons, most importantly of which is that Dyersburg failed to properly designate Mr. Hynes as an expert under the requirements of Federal Rule of Civil Procedure 26(a)(2)(B). (*Id.* at 1-2.)

## ANALYSIS

Dyersburg's compliance with Federal Rule of Civil Procedure 26(a)(2)(B) raises two issues: (1) Whether Mr. Hynes was retained or specifically employed to render an expert opinion such that an expert report was required, and (2) if Mr. Hynes was required to present an expert report, whether the content of materials he has already submitted, taken together, satisfies the expert report requirements. Because determination of the second issue is largely dependent on determination of the first, the Court begins with whether Mr. Hynes falls into the category of experts who are required to submit an expert report within the meaning of Rule 26(a)(2)(B).

### I. Retained or Specially Employed

Federal Rule of Civil Procedure 26(a)(2)(B) requires the submission of a written and signed report by any "witness who is retained or specially employed to provide expert testimony

in the case or whose duties as an employee of the party regularly involve giving expert testimony...." The Advisory Committee Notes to Rule 26(a)(2)(B) state:

> The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.

Thus, the Rule clearly distinguishes between those experts who are retained/specially employed to provide testimony and those who are not.[1]

A determination of whether an expert is retained or not is informed by the Advisory Committee Note's only example of an unretained expert, the treating physician.[2] When confronted with determining whether a treating physician is retained or not, the reasoning of prior courts has centered on the scope/substance of the treating physician's testimony.[3] "As an unretained expert, a treating physician may testify to events and opinions arising directly through her treatment of the patient."[4]

> Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report

---

[1] *See Kent v. Katz*, No. 2:99-CV-189, 2000 WL 33711516, *1 (D. Vt. Aug. 9, 2000); *Sprague v. Liberty Mut. Ins. Co.*, 177 F.R.D. 78, 81 (D.N.H. 1998).

[2] Fed. R. Civ. Pro. 26(a)(2)(B).

[3] *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007) (stating that the determinative issue is the scope of the proposed testimony); *Hawkins v. Graceland*, 210 F.R.D. 210, 211 (W.D. Tenn. 2002); *Kent*, 2000 WL 33711516 at *2; *Shepardon v. West Beach Estates*, 172 F.R.D. 415, 416-17 (D. Haw. 1997).

[4] *Kent*, 2000 WL 33711516 at *2.

requirement of Rule 26(a)(2)(B).[5]

Following this analysis, it becomes clear that "the application of the Rule 26 disclosure requirements depends on the substance of the [expert's] testimony rather than his or her status [as an expert]."[6] As such, whether an expert report is required seems to depend largely on whether the expert's opinion will be limited to testimony based on his personal knowledge of the factual situation or whether the testimony will be based on information they utilized to develop specific opinion testimony, i.e. knowledge acquired or developed in anticipation of litigation.[7] The above logic applies equally to those witnesses who may fall into the category of unretained

---

[5] *Shepardon*, 172 F.R.D. at 416-17.

[6] *Hawkins*, 210 F.R.D. at 211; *Wreath v. U.S.*, 161 F.R.D. 448, 450 (D. Kan. 1995).

[7] *Fielden*, 482 F.3d at 869; *Mohney v. USA Hockey, Inc.*, 138 Fed. Appx. 804, 811 (6th Cir. 2005); *Lamere v. New York State Office For The Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004) (stating that whether a consulting physician must submit an expert report seems to turn on why the patient saw the physician-for treatment or for testimony); *Linux One Inc. v. Inktomi Corp.*, No. C 03-01598 JW, 2004 WL 5518163, *1 (N.D. Cal. Aug. 26, 2004) ("Although a treating physician may testify as to observations made during the course of treatment, a treating physician is subject to the requirements of an expert witness, including Rule 26 reporting requirements, as to opinions based on information that was not learned in the course of treatment."); *Riddick v. Wash. Hosp. Ctr.*, 183 F.R.D. 327, 330-31 (D.D.C. 1998) (holding that the issues "comes down to whether [the physician] reached her opinions about causation and injury directly through her treatment of [the patient] or whether she developed those opinions close in time to the litigation of this matter and in connection therewith or at the request of counsel"). Shedding further light onto this distinction is the Advisory Committee Notes to Federal Rule of Civil Procedure 26(b)(4), which states in pertinent part:

> It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

Advisory Committee Notes at 144 (West Ed.2001); *see also Talarico v. Marathon Shoe Co.*, 182 F. Supp. 2d 102, 114 (D. Me. 2002) (quoting and applying the above language).

5

experts but who are not a treating physician.[8] Furthermore, at least one court has held that a witness who will be giving expert testimony should not be excused from the expert report requirement simply because they are not an employee nor will they be compensated for their work.[9]

When looking to the distinction regarding employees specially employed to give expert testimony and those who are not, circuits and district courts alike are decidedly split.[10] One line of cases seems to require that witnesses who have no connection to the underlying events, but who are instead called solely to offer expert testimony, are required to submit an expert report regardless of whether their employment does or does not involve the giving of expert testimony.[11] The other line of cases holds that the plain language of the rule clearly identifies only those employees who are specially employed to render expert opinion are required to submit an expert report, and thus by implication, those employees who do not regularly testify for the employer but are doing so in a particular case need not provide the report.[12]

---

[8] *Linux One Inc.*, 2004 WL 5518163 at *1 (noting that other courts extend the treating physicians rule to experts whose opinion testimony is based on matters personally observed or experienced by them, but who are not retained or specially employed); *Sprague*, 177 F.R.D. at 81.

[9] *Innogenetics v. Abbott Labs.*, 578 F. Supp. 2d 1079, 1089 (W.D. Wis. 2007).

[10] *Greenhaw v. City of Cedar Rapids, Iowa*, No. C07-0109, 2009 WL 393868, *2 (N.D. Iowa Feb. 17, 2009) (observing that a survey of decisions on this issue reveals a split among courts).

[11] *Prieto v. Malgor*, 361 F.3d 1313, 1318-19 (11th Cir. 2004); *Greenhaw*, 2009 WL 393868 (summarizing cases that follow this line of holding); *Berryhill v. Village of Streamwood*, No. 02 C 3268, 2004 WL 1444879 (N.D. Ill. June 28, 2004); *Day v. Consolidated Rail Corp.*, No. 95 CIV 968 (PKL), 1996 WL 257654 (S.D.N.Y. May 15, 1996).

[12] *Navajo Nation v. Norris*, 189 F.R.D. 610 (E.D. Wash.1999); *see also Greenhaw*, 2009 WL 393868 (summarizing cases that follow this line of holding).

In regards to the case at bar, Bekaert alleges that Mr. Hynes' involvement in the current lawsuit did not begin until he was approached by one of TVA's in-house attorneys about rendering an opinion on the issue of what is allowed under Schedule MSB, the rate schedule at which Bekaert was being billed during the relevant time period. (Pl.'s Mot. to Strike 3; D.E. # 85.) Bekaert asserts that Mr. Hynes has never been involved in any other disputes involving Schedule MSB, and that in order to formulate his opinion, Mr. Hynes discussed the situation with attorneys for DES and with Ron Owens, who is in TVA's customer service division. (*Id.*) Mr. John Kernodle, a TVA attorney, testified that after TVA and DES officials and attorneys met to discuss the Bekaert lawsuit, he received a call from DES' counsel, John Lannom, asking if TVA would sign a statement about the way DES was billing Bekaert. (*Id.* at 4; John Kernodle Dep. 63-64; D.E. # 83-7.) Eventually, TVA submitted Mr. Hynes' declaration in support of their position. As such, Mr. Hynes' knowledge on this issue seems to be based solely on information he learned after the lawsuit had been filed, which was provided to him by DES and TVA's in-house attorneys.

In response, DES alleges that the Mr. Hynes' deposition serves as the official position of TVA, and in designating Mr. Hynes as an expert, they have not violated Rule 26(a)(2)(B), because the Rule, by its own provisions, does not apply. (Def.'s Resp. to Pl.'s Mot. to Strike Expert Designation of Michael Hynes 3; D.E. # 91.) DES asserts that because Mr. Hynes has been neither retained nor specially employed by DES, he is not subject to the expert report requirement. (*Id.* at 5.) Rather, according to DES Mr. Hynes is a mere interested observer, who, as an employee of TVA, has direct, first hand knowledge of the facts underlying the lawsuit. (*Id.*) According to DES, in August 2007, Mr. Hynes reviewed the proposed DES-Bekaert

contract and then opined regarding DES' compliance with TVA's Rate Schedule MSB. (*Id.*) They go on to state that Mr. Hynes has also personally reviewed each and every bill prepared by DES for the billing period of January 2007 through December 2009 in order to verify whether they were calculated correctly and in conformance with Rate Schedule MSB. (*Id.* at 5-6.)

In applying Rule 26(a)(2)(B)'s "specially employed" provision to the facts at hand, the Court finds that DES is correct in observing that Mr. Hynes is a non-employee, non-party expert witness, and as such, he most likely cannot be said to fall within the category of experts required to submit reports under this provision.[13] In applying Rule 26(a)(2)(B)'s "retained" provision to the facts at hand, the Court finds the example provided within the Advisory Committee Notes is helpful.[14] Whether an expert is required to submit an expert report is dependent on whether the testimony was derived from the expert's personal knowledge or from information that enabled the expert to form an opinion in anticipation of litigation.[15] Other courts have applied this rule to experts other than treating physicians.[16] Mr. Hynes has functioned exactly as a retained expert would. After suit was filed, the attorneys for DES and TVA provided him with certain

---

[13] Fed. R. Civ. Pro. 26(a)(2)(B) (stating that the requirement of an expert report applies to those experts who are "specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony").

[14] Advisory Committee Notes to Rule 26(a)(2)(B) (stating that "[a] treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report").

[15] *Kent*, 2000 WL 33711516 at *2; *Shepardon*, 172 F.R.D. at 416-17; *see also Fielden*, 482 F.3d at 869; *Mohney*, 138 Fed. Appx. at 811; *Lamere*, 223 F.R.D. at 89; *Linux One Inc.*, 2004 WL 5518163 at *1; *Hawkins*, 210 F.R.D. at 211; *Riddick*, 183 F.R.D. at 330-31.

[16] *Innogenetics*, 578 F. Supp. 2d at 1089; *Linux One Inc.*, 2004 WL 5518163 at *1 (noting that other courts extend the treating physicians rule to experts whose opinion testimony is based on matters personally observed or experienced by them, but who are not retained or specially employed); *Sprague*, 177 F.R.D. at 81.

information and asked him to form an opinion about it. It is not customary for TVA to settle billing disputes between a distributor and one of their customers. Therefore, any testimony Mr. Hynes may offer regarding the way DES has billed Bekaert would be based solely on opinions formed in anticipation of litigation, not opinions formed based on his personal knowledge of the underlying dispute. As such, Mr. Hynes is retained within the meaning and purpose of Rule 26(a)(2)(B), and therefore, should have submitted an expert report.

## II. Expert Report Requirements

Once it is determined that an expert witness will testify within the meaning of Rule 26(a)(2)(B), the expert must submit a written report *prepared* and signed by the witness that contains the following:

> a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.[17]

In completing the written report, Rule 26(a)(2) contemplates that counsel may/will provide the expert with some assistance.[18] In fact the Advisory Committee Notes for Rule 26 state:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports.... Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

---

[17] Fed. R. Civ. Pro. 26(a)(2)(B) (emphasis added).

[18] *United States v. Kalymon*, 541 F.3d 624, 637 (6th Cir. 2008) (holding that it is permissible for an attorney to reduce an expert's oral opinion to writing so long as the report reflects the actual views of the expert).

9

Thus, it is customary for an attorney to aid in the preparation of an expert report, since "expert witnesses are likely to preoccupy themselves with their field of expertise, and ... counsel may need to assist them in preparing a report that complies with the rules, as they may have 'little appreciation or none whatsoever for Rule 26 and its exacting requirements.'"[19] Whether an expert report was prepared in a manner consistent with the mandates of Rule 26, usually turns on whether counsel's participation so exceeds the bounds of legitimate assistance as to negate the possibility that the expert actually prepared his own report, i.e. the expert must substantially participate in the preparation of his report.[20] Following this analysis assistance in the fine-tuning of an expert report in order to ensure compliance with the rule is permissible, while "preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it" is not.[21] In other words, "[p]reparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement...[,as] allowing an expert to sign a report drafted entirely by counsel without prior substantive input from [the] expert would read the word 'prepared' completely out of the rule."[22]

Federal Rule of Civil Procedure 37(c)(1) requires compliance with Rule 26(a), and "'mandates that a trial court punish a party for discovery violations in connection with Rule 26

---

[19] *Manning v. Crockett*, No. 95 C 3117, 1999 WL 342715, *2 (N.D. Ill. May 18, 1999) (quoting *Marek v. Moore*, 171 F.R.D. 298, 301 (D. Kan.1997)); *see also Howard v. Abdellatif*, No. 2:05-cv-81, 2008 WL 5130109, *1 (W.D. Mich. July 17, 2008).

[20] *In re Jackson Nat. Life Ins. Co. Premium Litigation*, No. 96-MD-1122, 2000 WL 33654070, *1 (W.D. Mich. Feb. 8, 2000) (holding that a report is not prepared by an expert when it fails to contain a single statement of expert opinion drafted from the experts own words).

[21] *Id.* at *3.

[22] *Id*.

unless the violation was harmless or is substantially justified.'"[23]  Rule 37(c) is a mandatory, self-executing sanction, and exclusion is automatic without a showing of substantial justification or harmlessness.[24]  A litigant who fails to comply with the Rule's mandates does so at their own peril, as Rule 37(c)(1) will bar the use of a witness or information that was not disclosed under Rule 26.[25]

Returning to the case at bar, DES asserts that should the Court find Mr. Hynes was required to submit an expert report the information already submitted is in compliance with the reporting requirements of Rule 26(a)(2)(B), and as a result, Plaintiff has suffered no prejudice. (Def.'s Supp. Resp. tp Pl.'s Mot. to Strike Expert Designation of Michael Hynes 6; D.E. # 116.) In response Bekaert asserts that Mr. Hynes' declaration is insufficient for a number of different reasons, one being that Mr. Hynes did not actually prepare his declaration as required by the Rule.  (Pl.'s Mot. to Strike Expert Designation of Michael Hynes 8; D.E. # 85.)  They contend that although Mr. Hynes initially testified that he was "involved in the preparation of this document," when asked to highlight the portions he had input on all he could state was that it was a "collaborative effort."  (*Id.*)  Instead, Plaintiff asserts the document was drafted as follows: Mr. Lannom, attorney for DES, supplied Mr. Kernodle with an outline of the contents of the TVA statement, which Mr. Kernodle and fellow TVA attorney Ying Ayliffe converted into a statement.  (*Id.* at 4.)  Mr. Kernodle then sent a copy of this statement to Mr. Lannom for his

---

[23]   *Matilla v. S. Ky. Rural Elec. Co-op. Corp.*, 240 Fed. Appx. 35, 42 (6th Cir. 2007) (citing *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)).

[24]   *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 429-30 (N.D. Okla. 2008); *id*.

[25]   *Cohlmia*, 254 F.R.D. at 429-30; *see also Matilla*, 240 Fed. Appx. at 42; *Innogenetics*, 578 F. Supp. 2d at 1089.

review, stating, "Per our discussion this morning, we are attaching a draft TVA statement regarding the Bekaert matter. As discussed, an appropriate TVA employee(s) would be able to make the statement in an affidavit(s)." (*Id.*) Thus, according to Bekaert Mr. Hynes' declaration was drafted by Mr. Kernodle prior to even indentifying the individual from TVA who was going to make it. (*Id.* at 8.)[26]

In analyzing whether counsel's participation has so exceeded the bounds of legitimate assistance as to negate the possibility that Mr. Hynes actually prepared his own report, the Court must determine if Mr. Hynes substantially participated in the preparation of his declaration.[27] Here the Court is presented with evidence that Mr. Hynes' report was originally prepared by Defendant's counsel. When questioned about this, Mr. Hynes could not actually point to any portion of the declaration, which could be said to have been his testimony. As such, the present set of facts is more akin to the situation in which testimony was wholly prepared by counsel with Mr. Hynes participation amounting to his signature after reviewing the document.[28] Therefore, as Defendant has failed to offer any showing of justification or harmlessness, Rule 37(c)

---

[26] Noteworthy to the Court is that Defendant DES failed to address the issue of who prepared the document in either their response or in their supplemental response. When asked at the hearing on this matter to comment on this issue, counsel for DES intimated that the preparation of this document was not beyond customary practice under the rule. In so asserting DES merely reiterated their argument that Mr. Hynes' declaration was not to serve as an expert report, as Mr. Hynes was not an expert such that submission of a report was required. However, in their supplemental response, DES went on to propound that should the Court find Mr. Hynes was required to submit an expert report, his declaration substantially complies with the requirements of the Rule. (Def.'s Supp. Resp. to Pl.'s Mot. to Strike 6; D.E. # 116.)

[27] *See In re Jackson Nat. Life Ins. Co. Premium Litigation*, 2000 WL 33654070 at *1.

[28] *See Manning*, 1999 WL 342715 at *2; *see also Howard*, 2008 WL 5130109 at *1.

mandates that Mr. Hynes testimony must be excluded.[29]

## **CONCLUSION**

Because Mr. Hynes was required to submit an expert report as provided by Rule 26(a)(2)(B), and because Mr. Hynes' declaration fails to comport with the expert reporting requirements, the Court hereby **GRANTS** Plaintiff Bekaert Corp.'s Motion to Strike Michael Hynes as an expert witness.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 5th, 2009.

---

[29] *See Cohlmia*, 254 F.R.D. at 429-30; *see also Matilla*, 240 Fed. Appx. at 42; *Innogenetics*, 578 F. Supp. 2d at 1089. Plaintiff raises several other objections to Mr. Hynes testimony, such as that it makes impermissible legal conclusions. (Pl.'s Mot. to Strike Expert Designation of Michael Hynes 8; D.E. # 85.) To this the Court would like to note that even if Mr. Hynes' declaration was found to be sufficiently rendered under Rule 26, it includes several troublesome statements, in which Mr. Hynes declaration purports to do nothing more than reach a series of legal conclusions pertaining to the underlying issue. *See Harrah's Entertainment, Inc. v. Ace American Ins. Co.*, 100 Fed. Appx. 387, 394 (6th Cir. 2004) (holding that affidavits offered in support of one party's interpretation of portions of an insurance policy did nothing more than reach a series of legal conclusions, and as such, the trial court did not abuse its discretion in striking them); *Woods v. Lecureux*, 110 F.3d 1215, 1220 (stating that testimony that does little more than tell the jury what result to reach is properly excludable).